1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11

WILLIAM R. W.,

Case No.  ED CV 20-01233-RAO

12

Plaintiff,

13

v.

**MEMORANDUM OPINION AND ORDER**

14

KILOLO KIJAKAZI,[1]
Acting   Commissioner   of   Social
Security,

15
16

Defendant.

17
18

## I.    <u>INTRODUCTION</u>

19
20
21
22
23

Plaintiff William R. W.[2] ("Plaintiff") challenges the Commissioner's denial of his application for disability insurance benefits ("DIB").  For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

///

24
25
26
27
28

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, the Acting Commissioner of Social Security, is hereby substituted as the defendant.

[2] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure  5.2(c)(2)(B)  and  the  recommendation  of  the  Committee  on  Court Administration and Case Management of the Judicial Conference of the United States.

## II.   **SUMMARY OF PROCEEDINGS**

On May 22, 2017, Plaintiff protectively filed a Title II application for DIB alleging that he had been disabled since January 1, 2017, due to manic depression, neuropathy in both legs, severe lower back pain and numbness in both legs, diabetes, hearing loss and Tinnitus, erectile dysfunction, and sleep apnea.  (Administrative Record ("AR") 17, 225, 258.)  His claims were denied initially on August 21, 2017, and upon reconsideration on September 28, 2017.  (AR 65-91.)  On October 12, 2017, Plaintiff filed a written request for hearing, and a hearing was held on March 28, 2019.  (AR 35-64, 105-06.)  Plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert.  (AR 35-64.)  On April 17, 2019, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[3] from January 1, 2017, through the date of the decision.  (AR 29.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)  Plaintiff filed this action on June 18, 2020.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2017, the alleged onset date.  (AR 19.)  At **step two**, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, lumbar radiculopathy, obstructive sleep apnea, mild osteoarthritis of the bilateral knees, and diabetes mellitus with hyperglycemia.  (AR 19.)  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AR 22.)

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except he can lift, carry, push or pull up to 20 pounds occasionally and up to 10 pounds frequently; can stand and/or walk for six hours in an eight-hour workday but requires a sit/stand option such that he can sit up to two times per hour for up to ten minutes each time while remaining on task; can sit for six hours in an eight hour workday; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl; never climb ladders, ropes or scaffolds; and he may use an assistive device for ambulation.  (AR 23.)  At **step four**, based on Plaintiff's RFC and the vocational expert ("VE")'s testimony, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 27-28.)  At **step five**, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (AR 28.)  Accordingly, the ALJ found that Plaintiff "has not been under a disability . . . from January 1, 2017, through the date of this decision."  (AR 29.)

## III.  <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

///

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Social Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.   DISCUSSION

Plaintiff's sole contention is that the ALJ erred in rejecting his subjective symptom testimony.  (JS at 5-17.)  For the reasons below, the Court remands.

### A.   The ALJ Erred in Rejecting Plaintiff's Subjective Symptom Testimony

#### 1.  Applicable Legal Standards

Where, as here, the claimant has presented evidence of an underlying impairment and the ALJ did not make a finding of malingering (see AR 24), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [his or her] . . . ability to perform work-related activities."  Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4.  In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical

4

sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4. The ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's statements. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted). The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 2. Background

In a Function Report dated July 1, 2017, Plaintiff stated that his ability to work was affected by his inability to concentrate for long periods of time, lower back pain and leg pain with extended periods of standing and sitting, fatigue due to a sleep disorder, and anxiety/depression. (AR 270.) He had no problem with personal care. (AR 271.) He could prepare frozen meals, sandwiches, and quesadillas about once a month, which took one or two hours. (AR 272.) He could help fold and sort laundry (twice a week), take out the trash (two or three times a week), and hose off the patio (once a month), although he needed help moving the laundry baskets. (AR 272.) He could drive a car, but 90% of the time his wife accompanied him. (AR 273.) He could shop in stores or by computer for groceries and personal items about once a month for one to three hours. (AR 273.) He watched television daily, played with an RC copter once a week indoors, and went fishing and camping once every six months. (AR 274.) He did not go out or socialize with friends due to anxiety/depression, pain, and fatigue. (AR 275.) He could walk about half or one block before having to rest for one or two hours. (AR 275.)

In a Function Report dated September 24, 2017, Plaintiff stated that his ability to work was affected by severe back spasms and pain, numbness in both legs that occurred constantly throughout the day; extreme pain with stooping, bending, sitting and standing for long periods of time; arthritis in both knees and hands that caused

swelling and stiffness; severe dizziness due to vertigo; and neuropathy in feet and hands.  (AR 306.)  He needed help tying his shoes and putting on socks due to back/leg pain, getting into and out of the bathtub, getting up from the toilet, and getting into the shower.  (AR 307-08.)  He did not prepare any meals.  (AR 308.)  He did not do any housework or yardwork due to severe pain, dizziness, depression and anxiety.  (AR 308-09.)  He could drive.  (AR 309.)  He shopped for dog treats and magazines by computer for five to ten minutes once every couple of months.  (AR 309.)  He read and watched movies daily, but had to take breaks to relieve the pain from sitting too long.  (AR 310.)  He could walk 150 feet before needing to rest, and needed to rest for hours or until the next day.  (AR 311.)  He could pay attention for 10-20 minutes.  (AR 311.)

At the hearing on March 28, 2019, Plaintiff testified that he has low back pain that radiated across his spine into his right hip and down his right leg, obstructive sleep apnea, tingling and complete numbness in his calves down to his feet, and pain in his knees.  (AR 42-44, 47-48.)  He has tendonitis in his elbow and cannot pick up a glass of soda or a cup because of the pain.  (AR 44.)  His hands get numb when he sleeps.  (AR 44-45.)  He has used a cane since before he was laid off from work, and uses it outside and inside because of his vertigo.  (AR 45, 52.)  He went to physical therapy and acupuncture, which provided temporary relief.  (AR 46-47.)  He got a TENS unit two years ago, which he uses two or three times a day for 20 to 45 minutes.  (AR 47.)  He received four injections in his knees and two in his back.  (AR 48.)  He injects himself with insulin twice a day for his diabetes.  (AR 49.)  He takes Norco for pain four or five times a day, which dulls the pain.  (AR 49-50.)  It makes him feel like "jelly," like he does not want to get up or do anything.  (AR 50.)  He takes Baclofen, a muscle relaxant, and a topical gel on his hands (for arthritis) and back.  (AR 50-51.)  Two or three times a month his knees hurt so bad that he cannot go up and down the stairs.  (AR 51-52.)  He sleeps four, five or six hours per night because he "keep[s] worrying about everything."  (AR 53.)  He is being treated for depression

and anxiety, which were diagnosed by a psychiatrist.  (AR 53.)  He takes Paxil twice a day for his mental issues.  (AR 54.)  Three or four times a day for 45 minutes to a couple of hours he has to lie down on his back or side because of back pain.  (AR 54-55.)  He does not shop for groceries, do errands or chores, or prepare meals.  (AR 55.)

### 3. The ALJ's Decision

The ALJ considered Plaintiff's subjective complaints.  (AR 23-24.)  The ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (AR 24.)  Specifically, the ALJ discounted Plaintiff's subjective complaints for four reasons:   (1) Plaintiff's daily activities were inconsistent with his subjective complaints; (2) Plaintiff's condition improved; (3) Plaintiff failed to follow prescribed treatment; and (4) Plaintiff's subjective complaints were inconsistent with the objective medical evidence.  (AR 24-25.)

### 4. Discussion

#### a. Activities of Daily Living

The ALJ found that Plaintiff's daily activities were "somewhat inconsistent with the extent of [Plaintiff's] subjective complaints about lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing, hearing, memorizing, completing tasks, concentrating, understanding, following instructions, using hands, and getting along with others."  (AR 24.)  The ALJ noted that Plaintiff's daily activities included performing personal care tasks, preparing simple meals, taking out the trash, sorting and folding clothes, driving, riding in a car, shopping by using the computer, watching television, and spending time with others.  (AR 24.)  The ALJ further noted that the record indicates that Plaintiff was doing well and performing activities of daily living.  (AR 24, 829, 863.)  On these bases, the ALJ concluded that Plaintiff's daily activities were inconsistent with his subjective symptom testimony.  (AR 24.)

Generally speaking, an ALJ may use inconsistencies between a claimant's testimony and his or her other statements, conduct, and daily activities as a basis for discounting his or her testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997); *see also Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) ("While transferability of skills to a work setting is one way in which an ALJ may consider a claimant's daily activities, an ALJ may also discount claimant testimony where reported daily activities contradict the claimant's alleged extent of her limitations."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount claimant's credibility). In this case, however, this was not a convincing reason for discounting Plaintiff's testimony.

Here, the ALJ mischaracterized Plaintiff's level of daily activity by omitting salient evidence from the record. The ALJ did not acknowledge evidence that Plaintiff prepared meals only about once a month, took the trash out two to three times per week, and folded laundry twice a week. (AR 272.) Nor did the ALJ mention that by September 2017, Plaintiff needed help with personal care, no longer prepared meals, no longer did chores around the house or yard, and shopped by computer five to ten minutes once every couple of months. (AR 307-09.) The ALJ also failed to acknowledge evidence that Plaintiff has had a TENS unit since 2017 that he uses three to five times per day for 45 minutes to two hours for his back pain.[4] (AR 54-55.) The evidence cited by the ALJ indicating that Plaintiff was doing well and performing activities of daily living is from one July 2017 psychiatric treatment note that is duplicated in the record. (AR 829, 863.) The Court notes that the record does indicate independence with ambulation and activities of daily living in April, July and October 2017, when Plaintiff reported that acupuncture helped his back pain

---

[4] The ALJ acknowledged this evidence only in a general discussion of Plaintiff's subjective complaints, but not when evaluating such complaints. (AR 23-25.)

by 80%, but his pain decreased his activity level by 75% in November 2017 and his pain interfered with ambulation, bathing, dressing, and grooming in February 2018. (AR 645, 658, 863, 959, 1048, 1071, 1256.)   Treatment notes also indicate that Plaintiff's pain was alleviated by lying down.   (AR 926.)   To the extent the ALJ discounted Plaintiff's symptom testimony because of his activities of walking, fishing, and hunting, which the ALJ noted later in the decision, there, too, the ALJ failed to discuss evidence indicating that Plaintiff's ability to do these activities was limited and impacted by his pain.   (AR 25, 274, 307, 356-57, 926.)   The ALJ's incomplete discussion of Plaintiff's daily activities does not constitute a clear and convincing reason for discounting Plaintiff's subjective testimony.   *See Rawa v. Colvin*, 672 F. App'x 664, 666 (9th Cir. 2016) (finding that where "the ALJ omitted a number of salient and dispositive facts and details when recounting [claimant's] activity level," "[s]uch an inaccurate representation of the record can not constitute a specific, clear, and convincing reason for rejecting" claimant's subjective symptom testimony).

Further, the ALJ erred by failing to explain how Plaintiff's ability to do these limited activities establishes that his daily activities are inconsistent with his subjective testimony or that he could perform work eight hours a day, five days a week.   *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("[T]here is no indication here that the limited activities [claimant] engaged in, often with the help of a friend, [ ] comprised a 'substantial' portion of [claimant's] day . . . .").   The ALJ also failed to address how Plaintiff's limited daily activities would transfer to a workplace setting.   *See Orn*, 495 F.3d at 639 ("The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.") (internal quotation marks omitted).

Accordingly, the record does not support the ALJ's finding that Plaintiff's activities were inconsistent with her symptom testimony.

### b. Improved Condition

The ALJ found that the record "is replete with examples of [Plaintiff's] improved condition," showing that Plaintiff was doing well and had no problems with his medications and doing activities of daily living, despite his allegations of back pain and numbness of the legs that persisted since the alleged onset date. (AR 24, 863.) Therefore, according to the ALJ, the evidence about the duration and frequency of Plaintiff's symptoms did not support the level of his alleged symptoms. (AR 24.)

Generally, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006). Here, despite finding that the record was "replete with examples," the ALJ cited one psychiatric medication visit in July 2017 indicating that Plaintiff was "doing well," and had no problems with his antidepressant, sleep medication, and CPAP machine for sleep apnea. (AR 24, 863.) Included in the history is a note, "Working in garden." (AR 863.) A psychiatric review of symptoms indicates that he was sleeping well, eating well, and doing activities of daily living and executive functions. (AR 863.)

The ALJ's reliance on Plaintiff's improved condition was not a clear and convincing reason to discount Plaintiff's subjective testimony about his back pain and leg numbness. The July 2017 psychiatric treatment note does not relate to Plaintiff's back pain and leg numbness, except possibly the brief references to "doing well" and Plaintiff's activities of daily living. Further, the treatment note is from a time when Plaintiff was doing limited activities of daily living. (AR 272.) What the ALJ omits is a discussion of the evidence that Plaintiff's physical improvements were temporary (AR 1071, 1256); that he takes Norco for pain four or five times a day, which makes him less alert and feel like "jelly" (AR 50, 1204); that Plaintiff was referred to pain management and got multiple back injections for low back pain with radicular features (AR 48, 1226, 1472, 1649-50); that Plaintiff needs to lie down with

a TENS unit multiple times per day for up to two hours at a time for back pain (AR 54-55); and that Plaintiff's activities of daily living were increasingly limited as discussed above.  Nor does the ALJ explain why, despite this evidence, she found that Plaintiff's condition improved to the point of undermining his allegations about the duration and frequency of his back pain and leg numbness.

Accordingly, the record does not support the ALJ's finding that due to Plaintiff's improved condition, the duration and frequency of his back pain and leg numbness did not support the level of his alleged symptoms.

### c.  Failure to Follow Prescribed Treatment

The ALJ found that Plaintiff's failure to follow prescribed treatment was inconsistent with Plaintiff's symptom testimony.  (AR 25.)  The ALJ noted that despite Plaintiff's complaints of back pain, Plaintiff was not taking his pain medication as much.  (AR 25, 1204.)

Generally speaking, failure to comply with treatment recommendations is a legitimate reason for discounting a claimant's credibility.  *See Tommasetti*, 533 F.3d at 1039-40 (explaining ALJ may consider fact that claimant failed to follow a course of treatment in making adverse credibility determination); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (an unexplained or inadequately explained failure to follow prescribed treatment "can cast doubt on the sincerity of the claimant's pain testimony").  Here, however, in the one example on which the ALJ relied, Plaintiff explained to his doctor that he was not taking his pain medication as much because he needed to be alert and awake.  (AR 1204.)  He reported that his back pain was 8-10/10 constantly, and he was considering a cortisone injection, which he got four months later.  (AR 1204, 1472.)  Although the ALJ purportedly gave additional examples of not following prescribed treatment, they were examples of activities of daily living and objective evidence.  (AR 25.)  The Court's review of the record identified additional examples of not following treatment recommendations.  In April 2017, Plaintiff reported that he rarely took Norco because his daughter was a nurse

and wanted him to minimize it. (AR 657.) Plaintiff also testified that the Norco made him feel like "jelly, you don't want to get up, you don't want to do anything." (AR 50.) Plaintiff appears to have had an explanation for not taking his pain medication as much as he should have. In addition, Plaintiff complied with treatment recommendations for acupuncture, cortisone injections, and use of a TENS unit, which appear consistent with Plaintiff's symptom testimony. (AR 47, 55, 925, 1226, 1472, 1650.) Given that the ALJ ignored Plaintiff's explanation and failed to articulate why Plaintiff's reason was inadequate, the ALJ erred in relying on the failure to follow prescribed treatment to discount Plaintiff's symptom testimony.

Accordingly, the record does not support the ALJ's finding that Plaintiff's failure to follow treatment recommendations was inconsistent with his symptom testimony.

### d. Inconsistent with the Objective Medical Evidence

Finally, the ALJ discounted Plaintiff's subjective testimony because his statements about the alleged intensity, persistence, and limiting effects of the symptoms were inconsistent with the objective medical evidence. (AR 24.) This reason cannot form the sole basis for discounting symptom testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Light*, 119 F.3d at 792 ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."). As this is the only remaining reason the ALJ provided for discounting Plaintiff's subjective testimony, this reason alone is not sufficient.

Because the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's subjective testimony, remand is warranted.

### B.    Remand for Further Administrative Proceedings

Plaintiff contends that the Court should reverse the ALJ's decision and award benefits, or in the alternative, remand for further proceedings. (JS at 22.) The

Commissioner contends that should the Court find reversible error, the proper remedy is remand for further proceedings.  (JS at 22-23.)

The Court finds that remand for further administrative proceedings is appropriate, as further administrative review could remedy the ALJ's errors.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances).[5]  The Court finds that the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony.  On remand, the ALJ shall reassess Plaintiff's subjective testimony.  The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five to determine what work, if any, Plaintiff is capable of performing.

## V.   **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  August 24, 2021

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

---

[5] Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *Id.* (citations omitted).  Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Id.* (citation omitted).

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**